IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE EX PARTE APPLICATION OF MOUSSY SALEM, | ) ) | |
| | ) | C. A. No.: _____ |
| Applicant, | ) | |
| | ) | |
| | ) | |
| FOR AN ORDER TO TAKE DISCOVERY | ) | |
| PURSUANT TO 28 U.S.C. § 1782 FROM BS | ) | |
| GESTCOM HOLDINGS CORP. | ) | |

## *EX PARTE* APPLICATION FOR ASSISTANCE IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Pursuant to 28 U.S.C. § 1782, Applicant Moussy Salem ("Moussy" or "Applicant"), by and through his undersigned counsel, respectfully submits this Application to take discovery from BS Gestcom Holdings Corp. ("BS Gestcom"), a resident of this District.

Applicant seeks an order authorizing the issuance of a subpoena *duces tecum* (the "Subpoena") to BS Gestcom in the form attached hereto as **Exhibit A**. This discovery is sought in aid of proceedings (the "English Proceedings") pending before the High Court of Justice, Business & Property Courts of England and Wales, Business List (ChD) (the "English Court"). The English Proceedings concern allegations by Applicant that Freddy Salem, Monline UK Limited, Salim Levy, and Ezra Aghai engaged in a wrongful pattern of conduct that includes breaches of fiduciary duty, conspiracy, and fraudulent transfers.

As discussed in greater detail in Applicant's accompanying memorandum of law, this Application: (i) meets the four statutory requirements set forth in 28 U.S.C. § 1782 for granting this Application; and (ii) satisfies the four discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), for granting the Application. The documents and information sought are relevant to the ongoing English Proceedings.

Applicant seeks the requested discovery for use in these proceedings, and the discovery sought is neither unduly burdensome nor intrusive to BS Gestcom. The English Court is receptive to the discovery sought and Applicant is not using this proceeding as an attempt to circumvent the requirements of the English judicial process.

Further, courts in this Circuit routinely grant Section 1782 applications *ex parte*, as here. *See, e.g.*, *In re O'Keeffe*, 646 F. App'x 263, 265, 269 (3d Cir. Apr. 12, 2016) (affirming denial of motion to quash subpoena issued pursuant to *ex parte* Section 1782 application); *In re Mota*, 2020 WL 95493, at *1 (D. Del. Jan. 8, 2020) ("Discovery applications under § 1782 are often granted *ex parte* because, *inter alia*, witnesses and other recipients 'can raise[] objections and [otherwise] exercise[] their due process rights by motions to quash.'" (quoting *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976))).

WHEREFORE, Applicant respectfully requests that the Court grant the Application and authorize Applicant to issue the Subpoena to BS Gestcom in the form attached hereto as **Exhibit A**; authorize Applicant to submit to the Court additional requests for further subpoenas *duces tecum* and/or *ad testificandum* as Applicant reasonably deems appropriate, and as are consistent with the Federal Rules of Civil Procedure; for the Court to retain jurisdiction over this matter for purposes of enforcing any subpoenas issued herein; and for such other and further relief as the Court deems just and proper.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

_____

James L. Higgins (No. 5021)
Elisabeth S. Bradley, (No. 5459)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
jhiggins@ycst.com
ebradley@ycst.com

BROWN RUDNICK LLP
Lauren Tabaksblat*
Tyler D. Purinton*
7 Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801
ltabaksblat@brownrudnick.com
tpurinton@brownrudnick.com

*Pro hac vice* admission to be filed

Dated:  January 12, 2024          *Attorneys for Moussy Salem*

31174202.1

3

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Delaware

| | | |
|---|---|---|
| *In re Ex Parte* Application of | ) | |
| | ) | |
| MOUSSY SALEM | ) | |
| | ) | Civil Action No. |
| FOR AN ORDER TO TAKE DISCOVERY | ) | |
| PURSUANT TO 28 U.S.C. § 1782 FROM BS | ) | |
| GESTCOM HOLDINGS CORP. | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    BS Gestcom Holdings Corp.

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Wilmington, DE 19801 | Date and Time:<br><br>1/25/2024 5:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     01/12/2024

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | */s/ James L. Higgins* |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Moussy Salem
_____ , who issues or requests this subpoena, are:

James L. Higgins, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, jhiggins@ycst.com, (302) 571-6600

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                 *Server's signature*

                                                              _____
                                                                 *Printed name and title*

                                                              _____
                                                                 *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

**DEFINITIONS**

The following definitions apply to each of the requests herein and are deemed to be incorporated in each. All terms not defined herein shall have the meanings assigned to them, if any, by the Federal Rules of Civil Procedure and the Local Rules.

1.      The term "African Businesses" refers to the set of trading businesses owned by the Salem Family and held through a series of trusts.

2.      The terms "You" and "Your" shall mean BS Gestcom Holdings Corp.

3.      The term "UK Litigation" shall mean the litigation currently pending in the High Court of Justice Business and Property Courts of England and Wales, Business List (ChD), involving claims brought by Applicant Moussy Salem against Freddy Salem, Monline UK Limited, Salim Levy, and Ezra Aghai, Claim No. BL-2022-000926.

4.      The term "Amended Particulars of Claim" shall mean the Amended Particulars of Claim filed in the UK Litigation by Applicant Moussy Salem on or about November 2, 2022. (*See* "**Exhibit 1**.")

5.      The term "Monline UK" shall mean Monline UK Limited, along with its subsidiaries, affiliates, predecessors, successors, divisions, departments, operating units, officers, consultants, directors, shareholders, employees, partners, limited partners, representatives, agents, accounts, associates, attorneys and any other person or entity acting, or purporting to act on its behalf.

6.      The term "UK Defendants" shall mean Freddy Salem, Monline UK Limited, Salim Levy, and Ezra Aghai.

7.      The term "Gestcom Trading" shall mean Gestcom International Trading Offshore SAL, also known as Gee Trading (Offshore) SAL, along with its subsidiaries, affiliates, predecessors, successors, divisions, departments, operating units, officers, consultants, directors, shareholders, employees, partners, limited partners, representatives, agents, accounts, associates, attorneys and any other person or entity acting, or purporting to act on its behalf.

8.      The term "Morsgate" shall mean Morsgate International Limited, along with its subsidiaries, affiliates, predecessors, successors, divisions, departments, operating units, officers, consultants, directors, shareholders, employees, partners, limited partners, representatives, agents, accounts, associates, attorneys and any other person or entity acting, or purporting to act on its behalf.

9.      The term "Monline International" shall mean Monline International Limited, along with its subsidiaries, affiliates, predecessors, successors, divisions, departments, operating units, officers, consultants, directors, shareholders, employees, partners, limited partners, representatives, agents, accounts, associates, attorneys and any other person or entity acting, or purporting to act on its behalf.

10.     The term "Parker" shall mean Parker Logistics Limited, along with its subsidiaries, affiliates, predecessors, successors, divisions, departments, operating units, officers, consultants, directors, shareholders, employees, partners, limited partners, representatives, agents, accounts, associates, attorneys and any other person or entity acting, or purporting to act on its behalf.

11.     The term "Parker Services" shall mean the logistical services originally provided by Parker to Morsgate pursuant to a Logistics Agreement dated on or about March 14, 2000, the obligation to provide such services being later transferred to Monline International on or about March 7, 2016, and that obligation being later transferred again to Monline UK on or about June 7,

2016, as alleged in Applicant's Amended Particulars of Claim.  On July 11, 2023 and August 2, 2023, the UK Defendants admitted in the UK Litigation that Gestcom Trading replaced Morsgate as the recipient of the Parker Services in or around July 2017.

12.     The term "concerning" shall mean comprising, consisting of, concerning, referring to, relating to, reflecting, regarding, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually concerned with the matter or document described, referred to or discussed.

13.     The term "document" shall be given the broadest possible meaning under Fed. R. Civ. P. 34, the Federal Rules, and the Local Rules, and shall be expressly deemed to include, but not limited to all hard copy documents or electronically stored information, however produced or reproduced, including all electronic messaging, such as email, electronically-stored documents and files, text messages, WhatsApp messages, Slack messages, as well as hand-written documents, spreadsheets, databases, calendar entries, or recordings of any kind (including voicemails).  The term "document" shall also include all original copies of such documents, as well as any copies that differ in any respect from the original (inclusive of notes of any kind, regardless of how recorded).

14.     The term "person" shall mean all natural persons, corporations, partnerships or other business associations, other legal or governmental entities or associations, and any juridical entity of whatever form.

15.     Each reference to a corporation, partnership, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and, with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents,

accountants, attorneys, and any other person who acted or purported to act on its behalf.

16.     Each reference to a natural person shall be deemed to include that person's agents, attorneys, and any other person who acted or purported to act on that person's behalf.

17.     The singular shall be deemed to include the plural, and the plural to include the singular, the conjunctive shall include the disjunctive, and the disjunctive shall include the conjunctive, as necessary so as to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

18.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of this document request all documents and responses which might otherwise be considered beyond the scope.

19.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

20.     The term "communication" shall mean any transmittal of information of any kind, in any form, and by any means.

21.     The terms "any" and "all" shall mean any and all, and shall serve to bring within the scope of the Requests all responses that might otherwise be construed to be outside of their scope.

22.     The term "including" shall mean including but not limited to the referenced subject.

## INSTRUCTIONS

1.      In producing documents and other materials, You are to furnish all documents or things in Your possession, custody, or control, regardless of whether such documents or materials are possessed, directly by You or Your employees, agents, parent company(ies), subsidiaries, affiliates, investigators, representatives, or by Your attorneys or their employers or investigators. Without limiting the term "control," a document is deemed to be within Your control if You have ownership, possession, or custody of the document, or the right to secure the document or a copy thereof from any person or public or private entity having physical possession thereof.

2.      To the extent You object to a part or all of any Request, the reason for the objection must be stated with particularity, and must state whether or not documents are being withheld on the basis of the objection.  If any part of a Request is objected to, then documents responsive to any unobjectionable portion must be produced.

3.      In responding to the Requests, You are required to make a diligent search of Your records, electronic files and of any other papers and materials in Your possession or available to Your representatives.   In the event that You are able to provide only part(s) of the document(s) called for in any particular Request for Production, provide all document(s) that You are able to provide and state the reason, if any, for the inability to provide the remainder.

4.      If, in responding to a Request, You claim any ambiguity, vagueness, or overbreadth in interpreting either the Request or a Definition or Instruction applicable thereto, You shall not utilize such a claim as a basis to refuse to respond.  Rather, the objection must state with specificity the term You believe to be improper, Your interpretation chosen or used in the response, and whether any documents are being withheld on the basis of Your objection.

5.      If You contend that any document responsive to these Requests is subject to any

privilege or protection, and You intend to withhold or redact such document on the basis of that privilege or protection, You are required to set forth a sufficient factual basis to establish that such privilege or protection is applicable to the requested document.  With respect to a document being withheld, You must provide the following information in Your response:

- The type of document

- The general subject matter of the document

- The date of the document; and

- Such other information as is sufficient to substantiate the privilege assertion, including where appropriate, the author of the document, the addressee of the document, and where not apparent, the relationship of the author and addressee to each other, and the name(s) and address(es) of each person who viewed or has had custody of the document or of any copies of the document.

If you fail to set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim of privilege or protection shall be waived.  Compliance with the above instructions is not to be construed as an admission by Applicant that such privilege or protection is valid, and Applicant reserves the right to challenge any purported claim of privilege or protection.

6.      Documents produced in response to these Requests shall be produced as they are kept in the regular course of business or shall be organized and labeled to correspond to the categories in these Requests.

7.      To the extent any document responsive to a Request was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You shall identify such document as completely as possible, including, without limitation, the:

- Nature of the document;

- The person who prepared or authorized the document and, if applicable, the person to whom the document was sent;

- The date on which the document was prepared or transmitted; and

- If possible, the reason for the document's unavailability, including whether any copies exist, if the document was lost or destroyed, the date on which the document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

8.     To the extent You believe no documents exist which are responsive to a Request, You must state in writing that no such documents exist.

9.     Documents within Your possession, custody, or control must be produced regardless of whether they are otherwise publicly available or available through other means.

10.     Color copies of documents are to be produced where color is necessary to interpret or understand the contents.

11.     Pursuant to Rule 26(e) of the Federal Rule of Civil Procedure, these Requests are deemed to be continuing in nature so as to require supplementation by You if You obtain or discover additional information or documents between the time of initial response and the time of hearing or trial herein.  This paragraph shall not be construed to alter any obligation to comply with all other instructions in these Requests.

12.     Your response to Requests shall not be delayed if they cannot be fully complied with by the date set herein for the presentation of documents for any reason, including, but not limited to, the assertion of any privilege, interposition of any objection, ongoing investigation, or current unavailability of documents.  All available documents should be produced on the date set herein for presentation, and any unavailable documents should be produced on a rolling basis as soon as they become available.

13.     Documents produced must be Bates numbered sequentially, with a unique identifier on each page, and with a prefix identifying the producing party.

14.     These Requests specifically contemplate the production of electronic or magnetic

data.  To the extent any of the documents produced in response to these Requests exist in electronic or magnetic form, such documents shall be produced in the form of computerized single-page TIFF image files together with load files suitable for use with standard document database software, such as Concordance or iPro.  The relationship between related documents (e.g., emails and attachments) should be preserved.  In addition, all documents whose native format is that of an electronic spreadsheet (e.g., Microsoft Excel file) shall also be produced in their native format, including the formulae imbedded in the spreadsheet and any metadata contained in the file. Applicant reserves the right to demand production of any other responsive documents in their native format, including all metadata, and You shall preserve, in their native format, all documents and metadata to which a duty of preservation attaches.

15.    Hard copy documents which are responsive to the Requests must be produced as they are kept in the ordinary course of business, and scanned with all available metadata.

16.    Your obligation to produce is continuing in nature, and, if necessary, you must provide updated responses to these Requests upon the discovery of additional information or documents.

17.    Applicant reserves the right to serve supplemental Requests for Production.

18.    Unless otherwise stated, these Requests seek any and all responsive documents from January 1, 2017 through the date of your responses to these Requests.

## REQUESTS FOR PRODUCTION

1.      All documents and communications concerning the formation of Gestcom Trading.

2.      All documents and communications concerning the services provided by Gestcom Trading to the African Businesses.

3.      All documents and communications concerning services provided by Monline UK to Gestcom Trading, including but not limited to the provision by Monline UK of Parker Services and the termination of those services.

4.      All documents and communications concerning any payments made by Gestcom Trading to Monline UK in connection with the provision and/or receipt of Parker Services.

5.      All documents and communications concerning Gestcom Trading's provision of Parker Services to any person or entity, including but not limited to documents sufficient to show the identities of those persons or entities, and the terms of any agreements.

6.      All documents and communications concerning any payments received by Gestcom Trading from any person or entity in connection with the provision of Parker Services.

7.      All documents and communications concerning the transfer of Morsgate's roles, duties, responsibilities, obligations, benefits, assets, and/or agreements to Gestcom Trading, including but not limited to the right to receive Parker Services.

8.      All documents and communications concerning the transfer of Monline UK's roles, duties, responsibilities, obligations, benefits, assets, and/or agreements to Gestcom Trading, including but not limited to the obligation to provide Parker Services.

9.      All documents and communications concerning the ownership and/or management structure of Gestcom Trading, including but not limited to the identities of Gestcom Trading's other shareholders, the ownership percentage of each shareholder, and the identities of Gestcom

Trading's directors, officers, executives, employees and/or agents.

10.    All of Gestcom Trading's account statements, management account statements, business statements, income and expenditure records, ledgers, profit and loss statements, wire transfers or other payments, organograms and/or share registers related to the provision or receipt of Parker Services.

11.    All communications between You and/or Gestcom Trading and any of the UK Defendants related to the claims and allegations in Applicant's Amended Particulars of Claim.

12.    All communications between You and/or Gestcom Trading and Your owner, Beno Salem, related to the claims and allegations in Applicant's Amended Particulars of Claim.


YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

James L. Higgins (No. 5021)
Elisabeth S. Bradley, (No. 5459)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
jhiggins@ycst.com
ebradley@ycst.com

BROWN RUDNICK LLP
Lauren Tabaksblat*
Tyler D. Purinton*
7 Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801
ltabaksblat@brownrudnick.com
tpurinton@brownrudnick.com

*Pro hac vice* admission to be filed

Dated:  January 12, 2024              *Attorneys for Moussy Salem*

31174255.1

# EXHIBIT 1

Claim no. BL-2022-000926

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS & PROPERTY COURTS OF ENGLAND AND WALES**
**BUSINESS LIST (ChD)**

BETWEEN:

**(1) MOUSSY SALEM**

**Claimant**

**and**

**(1) FREDDY SALEM**
**(2) MONLINE UK LIMITED**
**(3) SALIM LEVY**
**(4) EZRA AGHAI**

**Defendants**

---

**AMENDED PARTICULARS OF CLAIM**

---

**Substitution**

1.    This claim (the "**Claim**") was originally issued by Monline International Limited (a company in liquidation in the BVI, the "**Company**").  On 4 October 2022, the Claimant and the Company entered into a deed of assignment, in which the Company legally and absolutely assigned its right, title and interest in the Claim to the Claimant.  The Claimant is a creditor in the liquidation of the Company and also suffered indirect loss as a result of the actions pleaded in the Claim. The Claimant now purses the Claim in the place of the Company.

**The Company**

2.    The Company was incorporated in the British Virgin Islands ("**BVI**") on 23 September 2005.

3.    On 12 October 2020, the BVI Court ordered the Company to be wound up and appointed Mr Matthew Richardson and Mr Michael Leeds as the company's liquidators ("**the Liquidators**").

4.    The Company is one of a number of companies associated with the Salem family, of which the Claimant is a member, which runs a substantial trading business in Africa.

5.    To the best of the Claimant's knowledge and belief, at all material times the shares in the Company have been: (i) legally owned by a number of corporate entities (with association with

Salem family trusts and/or the First Defendant and/or Claimant) and (ii) beneficially owned by the First Defendant as to 50% and by Claimant and/or Mireille Salem as to 50%.

6.    The Company was dormant until approximately March 2016 when it took over the business of an English company, Parker Logistics Limited (in members' voluntary liquidation) ("**Parker**").

7.    The Company, however, only traded for a short period of time as the First Defendant caused and/or procured the transfer of its assets and business to the Second Defendant on or around 7 June 2016.

8.    The Liquidators investigated the affairs of the Company and have identified claims against each of the Defendants.  Those claims have been assigned to, and are being pursued by, the Claimant.

**The First Defendant**

9.    The First Defendant is resident in England and was appointed a director of the Company on 16 February 2016.

10.   Further:

(a)    the First Defendant is the uncle of the Claimant;

(b)    Mireille Salem is the mother of the Claimant;

(c)    the First Defendant has been in dispute with the Claimant and Mireille Salem in relation to the Salem family's business interests since at least 2014;

(d)    the First Defendant, the Claimant and Mireille Salem are resident in England.

**The Second, Third and Fourth Defendants**

11.   The Second Defendant is a company incorporated in England on 7 June 2016. According to Companies House Records:

(a)    The Third and Fourth Defendants were appointed directors of the Second Defendant on incorporation.

(b)    The Third and Fourth Defendants have held 50% each of the issued shares in the Second Defendant since incorporation.

**Duties owed by the First Defendant to the Company**

2

12.   As a matter of BVI law, the First Defendant owed fiduciary duties (at common law and/or in equity) to the Company including duties:

   (a)   to act in good faith and in the best interests of the Company;

   (b)   to exercise his powers only for proper purposes and not for any collateral purpose;

   (c)   not to misappropriate, misapply, divert or misuse the Company's funds, assets or opportunities;

   (d)   to exercise independent judgement; and

   (e)   to avoid situations in which he had, or could have, a direct or indirect interest that conflicted, or might conflict, with the interests of the Company.

13.   Further, in his capacity as a director of the Company, the First Defendant owed the duties set out at sections 120 to 125 of the BVI Business Companies Act 2004 ("**the BCA**") at the time when he was a director of the Company, including duties:

   (a)   to act honestly and in good faith and in what he believed to be the best interests of the company (s. 120(1) BCA);

   (b)   to exercise his powers as a director for a proper purpose and not to act, or agree to any company acting, in a manner that contravened the BCA or the memorandum and articles of the company (s. 121 BCA); and

   (c)   to exercise reasonable care, diligence and skill (s. 122 BCA).

14.   Further, as a director for the Company, the First Defendant was required to keep, or to cause to keep:

   (a)   books and records sufficient to show and explain that company's transactions, at common law and/or pursuant to s. 98 BCA); and

   (b)   copies of minutes of all meetings and resolutions of directors or members (or committees of directors or members), at common law and/or pursuant to s.102 BCA.

**The transfer of the Company's business and assets to the Second Defendant**

15.   At all material times prior to 30 March 2016:

   (a)   The First Defendant and the Claimant were the registered directors of Parker;

(b)    Parker was legally and beneficially owned by the First Defendant as to 50%, the Claimant as to 25% and Mireille Salem as to 25%;

(c)    The sole business of Parker was the provision of services to Morsgate International Limited ("**Morsgate**") pursuant to a Logistics Agreement dated 14 March 2000;

(d)    Morsgate was beneficially owned by various members of the Salem family;

(e)    Parker was a profitable business. Parker's draft Annual Report and Accounts for the year ended 31 March 2014 record that Parker's retained profits were £2.3 million in 2013 and £2.4 million in 2014.

16.    In or around 2016, a decision was taken to transfer the business and assets of Parker to the Company. The Claimant understood this was consequential to a wider settlement reached between members of the Salem family and for tax reasons. Subsequently:

(a)    On 16 February 2016 the Company opened a first UK establishment which was registered at Companies House on 7 March 2016.

(b)    On 30 March 2016:

(i)    the business and assets of Parker were transferred to the Company pursuant to an Asset Sale Agreement of the same date ("**the ASA**");

(ii)    Parker entered members' voluntary liquidation in England;

(iii)    Morsgate confirmed in writing that it wished to appoint the Company to provide logistical services in place of Parker.

17.    Under the ASA, the Company agreed to pay Parker a total consideration of £132,000. This consideration was apportioned to the fixed assets of Parker (listed in Schedule 1 to the ASA) and did not include any consideration for the value of the business and goodwill being transferred.

18.    As above set out, the Second Defendant was incorporated on 7 June 2016. At or around the same time, the entire business and assets of the Company were transferred to the Second Defendant ("**the UK Transfer**").

19.    The Claimant's position is that:

(a)     In 2016 he was asked by a representative of the First Defendant to agree the transfer of the Company's business and assets to a newly incorporated UK company because the Company was not able to open a UK bank account by reason of its BVI domicile;

(b)     He was only prepared to agree to a transfer the Company's business and assets to a newly incorporated UK company if he and the First Defendant were both appointed directors of the new company and their beneficial interests mirrored their interests in the shares in the Company as above set out; and

(c)     He was not informed about the UK Transfer and did not give his consent to the UK Transfer in his capacity as a director or beneficial shareholder of the Company or in any other capacity.

20.    To the best of the Claimant's current knowledge and belief:

(a)     The Third and Fourth Defendants are former employees of Parker and the Company and have never held (directly or indirectly) any shareholding interest in Parker or the Company;

(b)     There is no written agreement or any other contemporaneous documents recording the reasons for, and the terms of, the UK Transfer;

(c)     No directors' or shareholders' meetings were held to approve the UK Transfer and no resolutions approving the transfer were passed in breach of the Company's Articles of Association;

(d)     No consideration was paid by the Second Defendant to the Company in relation to the UK Transfer at the time the UK Transfer was made.

21.    On or about 9 December 2020 the First Defendant in his capacity as sole director of the Company swore a statement of affairs pursuant to section 255 of the BVI Insolvency Act 2003 which stated that the Second Defendant owed the Company the sum of £66,288 being in respect of fixed assets in the sum of £13,000, staff loans in the sum of £46,000 and profits earned by the Company during the period end of March 2016 to end of May 2016 inclusive in the sum of £7,288.

22.    On or about 25 May 2022 the Second Defendant paid the sum of £50,000 into the bank account of the Joint Liquidators and on or about 26 May 2022 the Second Defendant paid the sum of £16,288 into the bank account of the Joint Liquidators which together total the sum of £66,288

and was accepted by the Joint Liquidators solely on the basis that the sum of £66,288 was not in full and final settlement of the Company's claim against the Second Defendant

23.     In the premises, there was no consideration, or alternatively no adequate or valuable consideration, for the UK Transfer and it is to be inferred that the UK Transfer was not entered into for any good commercial reason and/or for the sole benefit of the First Defendant and/or that the Third and Fourth Defendants hold their shares in the Second Defendant on trust for the First Defendant. The UK Transfer constituted, either wholly or in part, a gratuitous transfer to the Second Defendant and therefore a misapplication of the Company's assets at a time when the First Defendant was in dispute with the Claimant and Mireille Salem as to the ownership of various Salem family business interests.

24.     Further or alternatively, if and to the extent that the First Defendant became the beneficial owner of the Second Defendant, the UK Transfer was an unlawful distribution of capital and/or *ultra vires* the Company under the BCA.

**Breaches of Duty by the First Defendant**

25.     In causing and/or procuring and/or permitting the UK Transfer, the First Defendant:

(a)     diverted the business of the Company and/or a corporate opportunity of the Company (namely the provision of services to Morsgate) to the Second Defendant;

(b)     misapplied the Company's assets; and/or

(c)     caused and/or procured and/or permitted the Company to make unlawful distributions of capital to one of its shareholders; and/or

(d)     exercised his powers for an improper purpose and/or failed to have regard, or sufficient regard, to the interests of the Company and/or the interests of the Company's shareholders and/or creditors; and/or

(e)     preferred his own interests and/or those of the Second Defendant and/or those of the Third and Fourth Defendants over the interests of the Company; and/or

(f)     failed to obtain the approval of the other shareholders and directors for the UK Transfer; and/or

(g)     acted to the detriment of the Company.

26.     Further the First Defendant failed to keep or to cause the Company to keep proper books and records, including (but not limited to) records and explanations in relation to the UK Transfer.

27.     In the premises, the First Defendant breached his duties to the Company as set out in paragraphs 12 to 14 above.

**Gratuitous transfer and knowing receipt**

28.     The UK Transfer constituted, either wholly or in part, a gratuitous transfer to the Second Defendant and a misapplication of the Company's assets.

29.     The Company is accordingly entitled to the return of such assets as were misappropriated or their traceable proceeds, as may have been received (directly or indirectly) and retained by the Defendants.

30.     Further or alternatively, the First Defendant's knowledge is to be attributed to the Second Defendant. Accordingly, the Second Defendant knew (or reasonably ought to have known) that the UK Transfer represented misappropriations of the Company's assets and/or were made in breach of the First Defendant's duties to the Company. In all the circumstances it would be unconscionable for the Second Defendant to retain the benefit of the assets transferred pursuant to the UK Transfer and is liable to pay equitable compensation to the Company in relation to said transfer.

**Conspiracy**

31.     It is to be inferred that the UK Transfer was the product of concerted action in accordance with a combination, understanding or agreements reached in or around 2016 between at least the First and Second Defendants.

32.     The First and Second Defendants knew that the purpose of the UK Transfer was to divest the Company of all its assets for no consideration or at an undervalue with the purpose of putting those assets out of the reach of the other shareholders of the Company.

33.     The First and Second Defendants entered into the combination, understanding or agreement referred to at paragraph 28 above with the intention of causing loss to the Company (or, alternatively with the intention that the rights of its shareholders would be prejudiced).

34.     Pursuant to the combination, understanding or agreement, each of the First and Second Defendants participated in the UK Transfer.

35.     The concerted action involved the use of unlawful means in that by causing and/or procuring the Company to enter into the UK Transfer, the First Defendant acted in breach of his duties to the Company.

36.     The Company suffered loss as a result of the abovementioned conspiracy .

**Relief to be claimed**

37.     In the circumstances, the Claimant (having been assigned the Claim by the Company) is entitled to at least the following relief:

(a)     a declaration that the Third and Fourth Defendants hold their shares in the Second Defendant on trust for the First Defendant; and/or

(b)     a declaration that the First Defendant held his interest in the Second Defendant on constructive trust for the Company and now holds that interest for the Claimant pursuant to the assignment; and/or

(c)     an order that the Third and Fourth Defendants transfer the shares in the Second Defendant to the Claimant (as assignee of the Claim from the Company); and/or

(d)     equitable compensation and/or damages from the First Defendant in relation to his breaches of duty to the Company as above set out; and/or

(e)     equitable compensation and/or damages in respect of the assets transferred pursuant to the UK Transfer from the Second Defendant; and/or

(f)     the return of the assets transferred pursuant to the UK Transfer or their traceable proceeds, as may have been received (directly or indirectly) and retained by any of the Defendants; and/or

(g)     an account of profits in respect of the assets received (directly or indirectly) by the Defendants from the Company pursuant to the UK Transfer and any benefit received therefrom;

(h)     damages against the First and Second Defendants for unlawful means conspiracy.

**STATEMENT OF TRUTH**

The Claimant believes that the facts stated in these particulars of claim are true. The Claimant understands that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed:

Full name:  SIMON GOLDRING

Dated:  2 November 2022

Address for receiving documents:

Maurice Turnor Gardner LLP
15th Floor Milton House
Milton Street
London
EC2Y 9BH

Solicitors for the Claimant